# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**KYLE CAVANESS,**

                        **Petitioner,**

       v.                                                 **CASE NO. 08-3247-CM**

**RAY ROBERTS, et al.,**

                        **Respondents.**

## MEMORANDUM AND ORDER

This matter comes before the court on a petition for writ of habeas corpus under 28 U.S.C. § 2254. Kyle Cavaness proceeds with counsel, seeking relief from alleged constitutional error in his state conviction. Having reviewed the record which includes respondents' answer and return, the court enters the following findings and order.

**I.**    **Background**

A Wyandotte County jury found Cavaness guilty of first degree premeditated murder, conspiracy to commit premeditated first-degree murder, and aggravated kidnapping. All offenses related to the beating and death of Deangelo Wheeler. The Kansas Supreme Court affirmed Cavaness' convictions, and set forth the following account of these criminal charges.

> Kyle Cavaness' sister, Alisha Gray, testified that in October 2002, she was living with the defendant and Ryan Goldenburg at a home in Wyandotte County. The victim, Deangelo Wheeler, had also been staying at the home for a few days before the murder.

Gray testified that on the night of October 9, 2002, Gray, Cavaness, and Wheeler left the house to purchase crack cocaine while Robbie Buehler-May and Goldenburg remained at the house. When they returned to the house, Gray, Cavaness, and Goldenburg smoked the crack while Buehler-May and Wheeler smoked marijuana. Around 5 a.m., Goldenburg and Wheeler left to buy more crack, leaving Gray, Cavaness, and Buehler-May at the house.

When Goldenburg and Wheeler returned, Wheeler realized his marijuana joint was missing and accused Gray, Cavaness, and Buehler-May of stealing it while he was gone. Buehler-May and Wheeler got into a heated verbal argument which eventually involved everyone. Wheeler was told to leave, but he refused. After about an hour, Gray, believing that the men were about to fight, went into her bedroom. The men went outside. Cavaness had a baseball bat, Goldenburg had bolt cutters, and Buehler-May had a wooden pole. Wheeler had no weapon. Gray heard someone other than Wheeler yell, "Hit him." She then heard someone say, "Get him back in the house." When the men carried Wheeler back into the house, Gray observed that there was a big, bleeding gash on his forehead and that he appeared to be unconscious. Gray returned to her bedroom. When she heard a few more blows, she called Cavaness into her bedroom and asked him whether Wheeler was alive. Cavaness replied, "Yes." Gray stated that, from the time the men came back inside the house, Cavaness spent "[a]lmost the entire time" in Gray's bedroom but did come and go from her room, as did Goldenburg and Buehler-May. Gray heard one of the men say that they could not let Wheeler go in that condition, and no one disagreed.

Cavaness called the next-door neighbor, Michael Dressler, asking him for something with which to tie up Wheeler. When Dressler brought telephone wire over to the house to bind Wheeler, he saw Wheeler lying on the floor with his feet moving. Dressler left and returned later at which time he observed that Wheeler's feet were bound. He heard Wheeler moaning or calling out.

Gray testified that about a half hour after the men brought Wheeler into the house, Buehler-May came into the bedroom and said that he had broken Wheeler's neck and that he was dead. Buehler-May and Goldenburg then wrapped the body in a tarp and put it on the deck.

Ashley McCann testified that she was close friends with Buehler-May. On October 10, 2002, Buehler-May called McCann and asked her to come over to his apartment

because he needed to talk to her. When she arrived, Buehler-May told McCann that he had killed someone the night before. Later the same day, Buehler-May and McCann drove to Cavaness' house. Gray, Goldenburg, and Cavaness were at the home. McCann noticed blood on a recliner in the living room, as well as blood on the walls and ceiling. Buehler-May, Goldenburg, and Cavaness began describing how they had beaten and eventually killed the victim the night before. McCann described Cavaness as smiling and laughing during the conversation. At one point Cavaness lifted a dust pan to show McCann a puddle of blood hidden underneath. Buehler-May pointed out to McCann where the victim's body was outside. McCann heard the men discuss disposing of the body by burning it or throwing it in the river and disposing of their bloody clothes by burning them. That evening, the three men dumped Wheeler's body into the river. Gray later helped Cavaness and Goldenburg try to clean up the living room by scrubbing blood off the walls. The next day, McCann went to the police.

After Cavaness' arrest, Detective Warczakoski and Detective Howard interviewed him. Cavaness waived his Miranda rights and made a videotaped statement which was played for the jury but is not included in the record on appeal. According to the detectives' testimony about the statement, Cavaness admitted to participating in the beating of Wheeler, although he also stated Buehler-May was leading the attack. Cavaness said that after Wheeler was brought back into the house, he struck Wheeler between one to three more times with the bat. Cavaness also admitted to having a discussion about whether the men could allow Wheeler to leave the house alive. He stated that the decision to kill Wheeler was a group decision. The entire ordeal lasted 2 hours. After the interview, Cavaness showed the detectives where the men had thrown Wheeler's body into the river and where they had burned the clothes they had been wearing.

An underwater search and rescue team located Wheeler's body a few days after the murder. The body was wrapped in a blue tarp with two bricks attached. The head was covered by a white plastic bag; the legs were bound and the hands tied behind the back.

*State v. Cavaness*, 278 Kan. 469, 470-472 (2004).

Cavaness sought post-conviction relief in a motion filed pursuant to K.S.A. 60-1507, alleging ineffective assistance of trial counsel (Carl Cornwell), and claiming his videotaped statement to the

police should have been suppressed. The district court appointed counsel, conducted an evidentiary hearing in which both Cavaness and Cornwell testified, and denied relief. The Kansas Court of Appeals ("KCA") affirmed that decision. *Cavaness v. State*, 2008 WL 440530 (Kan.App. February 15, 2008)(unpublished opinion), *rev. denied* (July 3, 2008).

**II.     Claims**

Cavaness claims Cornwell's pretrial and trial strategies were not based on sufficient investigation or client communication, and contends this denied Cavaness his right to counsel under the Sixth and Fourteenth Amendments. Cavaness specifically claims Cornwell failed to adequately investigate the circumstances of Cavaness' videotaped statement to the police, and should have filed a motion to suppress that statement. Cavaness also claims he was not consulted about Cornwell's admission during closing argument that Cavaness killed the victim, an admission Cavaness characterizes as contrary to the defense theory that the victim's death was unintentional.

Next, Cavaness requests an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2) to develop his claim that Cornwell failed to consult with Cavaness prior to acknowledging Cavaness' involvement in the murder during closing argument.

Finally, Cavaness claims he was denied a fair trial because the trial court erroneously refused to instruct the jury on the lesser included offense of unintentional second degree murder, and because insufficient evidence of premeditation supported the convictions.

**III.    Standard of Review**

Where a state court has considered and decided a petitioner's claims on the merits, habeas relief may be granted only if the petitioner establishes the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

A state court's decision is "contrary to" federal law if the state court "fails to apply the correct controlling Supreme Court authority or comes to a different conclusion ... [from] a case involving materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of Supreme Court law if "the state court correctly identifies the governing legal principle from [United States Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* The state court's application of clearly established federal law must be objectively unreasonable. *Id.* See also *Snow v. Sirmons*, 474 F.3d 693, 696 (10th Cir.2007)(habeas relief may be granted only when the court is "convinced the state court's application of federal law goes beyond being erroneous and instead becomes objectively unreasonable"). A state court's findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**IV.    Discussion**

**A.    Ineffective Assistance of Counsel**

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-prong test for evaluating claims of ineffective assistance of counsel. Under *Strickland*, a petitioner must first demonstrate counsel's performance was deficient in that it "fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner "must show that (counsel's) deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687 and 694. "[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect[,] but whether that determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, __U.S.__, 129 S.Ct. 1411, 1420 (2009) (internal quotation marks and citation omitted).

A court also must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Petitioner bears the burden of overcoming "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Id.* (internal quotation marks and citation omitted). A "doubly deferential" standard of review applies to the evaluation of a *Strickland* claim under § 2254(d)(1), in that the court is to defer to the state court's determination that counsel's performance was not deficient, and further defer to the attorney's decision in how best to represent a client. *Knowles*, 129 S.Ct. at 1420 (*citing Yarborough v Gentry*, 540 U.S. 1, 5-6 (2003)).

### 1. No Motion to Suppress (Claim 1-A)

In the present case, Cavaness claims Cornwell failed to adequately investigate the circumstances of Cavaness' confession to the police, and contends Cornwell's failure to challenge the admissibility of that statement was objectively unreasonable and prejudicial under the circumstances. Cavaness states he had only brief encounters with Cornwell prior to the preliminary hearing and trial, cites being interrogated by the police for at least a hour prior to his videotaped statement, and claims he attempted to invoke his right to counsel prior to his videotaped statement but was told it would be better to proceed without counsel. Cornwell essentially testified Cavaness' videotaped confession was

unassailable because it was clear that Cavaness was fully and properly advised of his rights under *Miranda*.[1] Also, even though Caveness appeared sleepy with some indication he had recently taken drugs, it did not appear to Cornwell that Caveness exhibited any impairment or disability in waiving those rights or in understanding and answering questions.[2]

After hearing testimony from Cavaness and Cornwell, the state district court judge found Cornwell's pretrial contact with Cavaness had been sufficient. The state judge further found Cornwell's decision to forego a motion to suppress Cavaness' statement was a reasonable strategic decision under the circumstances because a motion to suppress would not have been successful, and because Cavaness' statement helped bolster the defense. Finding no deficient performance under the first *Strickland* prong, the state judge observed that Cornwell provided a vigorous defense in this case in which there was little to work with from the defense perspective, and cited circumstances including the heinous nature of the crime, the victim's suffering during a long and drawn out killing, and Cavaness' participation in dumping the body in the river, destroying evidence, and using crack

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966). In this case, Cornwell stated "it was one of the best *Miranda* warnings [he had] ever seen." Vol. VIII, p.19. A transcript of Cavaness' statement was admitted as evidence in the 1507 evidentiary hearing. Neither attorney in that hearing had seen the videotaped statement. VIII. p.90.

> In affirming the district court's denial of the 1507 motion, the Kansas Court of Appeals stated:
> Upon viewing the tape, Cornwell concluded that the police performed one of the most thorough *Miranda* warnings he had ever seen and he saw no possibility that the court would suppress it. Despite Cavaness' drug use a number of hours before the interview, it did not appear from the tape that Cavaness was under the influence of drugs at the time he gave his statement. Further, Cornwell believed that the tape undercut the State's theory that the murder was premeditated. He believed the benefit from admitting the tape outweighed the benefit from suppressing it.

*Cavaness v. State,* 2008 WL 440530, *2 (Kan.App. 2008).

[2] Vol. VIII, pp.15-16.

cocaine.³

The state district court judge also found no prejudice under the second *Strickland* prong, stating the outcome of the case would not have been different in light of the wealth of other evidence against Cavaness.⁴ The KCA affirmed, finding substantial competent evidence supported the district court's factual determinations, and finding the district court's legal conclusions were legally sound. *Cavaness*, 2008 WL 440530, *3. The KCA upheld the district court's application of *Strickland*, and found no showing that trial counsel performed deficiently, or that Cavaness suffered any prejudice by counsel's performance.

Accordingly, federal habeas relief under § 2254 is available only if Cavaness demonstrates that KCA unreasonably applied *Strickland* to the facts in his case,⁵ or that KCA's finding - that Cornwell made a strategic decision to forego a motion to suppress - was an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.⁶ Cavaness fails to make either showing.

Cavaness disputes the extent of Cornwell's efforts, and argues deference to a trial strategy rationale for Cornwell's failure to file a motion to suppress is not warranted where Cornwell failed

---

³Vol. IX, pp.9-10.

⁴*Id.*, pp.10-11.

⁵See *Holland v. Jackson*, 542 U.S. 649, 652 (2004)(§ 2254(d)(1) applies when state court identifies correct governing legal principle but unreasonably applies that principle to the facts of petitioner's case).

⁶ See *Wood v. Allen*, __ U.S. __, 130 S.Ct. 841, 851 (2010)(applying § 2254(d)(2) to reasonableness of state court's finding that counsel made a strategic decision to not pursue or present evidence of the defendant's mental deficiencies, and distinguishing that issue from review under § 2254(d)(2) as to "whether the strategic decision itself was a reasonable exercise of professional judgment under *Strickland* or whether the state court's application of *Strickland* was reasonable under § 2254(d)(1)).

to adequately investigate the circumstances underlying his client's interrogation. However, the competency of Cornwell's representation is presumed, and even "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 at 690-91. The court finds Cavaness makes no persuasive showing to overcome the state court's determinations that Cornwell's decision to forego any attempt to suppress Cavaness' statement was a reasonable strategic decision under the circumstances, and that Cornwell's performance at trial counsel was constitutionally sufficient. Cavaness' attempt to evaluate Cornwell's performance in hindsight, or against a standard requiring pursuit of all claims regardless of their merit, is rejected. *See Knowles*, 129 S.Ct. at 1420 (Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success").

But even if deficient performance by Cornwell could be established, Cavaness' challenge to the state court's finding on the prejudice prong also fails. See *Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."); *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir.1998)(court "may address the performance and prejudice components in any order, but need not address both if [petitioner] fails to make a sufficient showing of one") . The prejudice prong addresses counsel error "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

To establish prejudice, petitioner "must show he would likely have prevailed on the suppression motion and that, having prevailed, there is a reasonable likelihood that he would not have been convicted." *Snow*, 474 F.3d at 721 (internal quotation marks and citation omitted). The court finds Cavaness makes no such showing in this case.

To the extent Cavaness contends he would have prevailed on a motion to suppress if Cornwell had investigated further and had argued Cavaness' statement was unlawfully obtained after invoking his right to counsel, the KCA disagreed, finding Cavaness' question about whether he should have an attorney was not an unambiguous and unequivocal request for counsel prior to the videotaping of Cavaness' statement. Cavaness argues this decision by the KCA is contrary to the established law in *Davis v. United States*, 512 U.S. 452 (1994), and is an unreasonable application of that law to the facts of Cavaness' case because the police cannot actively dissuade an accused from exercising his right to counsel. The court disagrees.

In *Davis*, the Supreme Court reiterated that "a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning," *id.* at 457 (citing *Miranda v. Arizona*, 384 U.S. 436, 469-73 (1966)), and "if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation," *id.* at 458 (citing *Edwards v. Arizona*, 451 U.S. 471, 484-85 (1981)). A suspect's request for counsel must be unambiguous, however. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," no cessation of questioning is required by Supreme Court precedents. *Id.* at 459 (emphasis in original). Further questioning of the suspect is not limited to clarifying whether the suspect is invoking his right to counsel. *Id.* at 461.

In the present case, Cavaness' question as to whether he should have an attorney was not a clear invocation of his right to counsel, but was rather like the defendant's statement in *Davis* that "Maybe I should talk to a lawyer," *id.* at 455, which the Supreme Court held was not a clear and unambiguous request for counsel. *Id.* at 462. Thus the detectives were not required to clarify Cavaness' ambiguous statement, or to stop further questioning. Although Cavaness contends the detectives improperly recommended that Cavaness cooperate because it would look better in front of the jury,[7] *Davis* does not prohibit such a response, and there is nothing in the record to suggest that Cavaness' waiver of his *Miranda* rights was not knowing and voluntary. Accordingly, the KCA's determination that a motion to suppress Cavaness' videotaped statement would not have been granted if Cornwell had raised a claim under *Davis* was not contrary to or an unreasonable application of federal law as decided by the Supreme Court, and did not involve an unreasonable determination of the facts.

In sum, the KCA determined that Cavaness failed to demonstrate that Cornwell's failure to file a motion to suppress was constitutionally deficient or prejudicial. This was not an objectively unreasonable application of *Strickland* to the facts of this case considering Cornwell's assessment of the videotape as clearly showing Cavaness making a voluntary statement after being fully and properly advised of his rights, the weight of the evidence against Cavaness, and the overall defense strategy of presenting Cavaness as cooperating with police and trying to persuade the jury that

---

[7]*See* Transcript of 60-1507 Hearing, Vol. VIII, p.70. *But see* Trial Transcript, Vo. 11, p.371 (one of two detectives interrogating Cavaness did not agree that he ever told Cavaness it would "look better" or "be of some benefit" if Cavaness talked to them); Trial Transcript Vol. III, p. 522-23 (other detective said he told Cavaness the videotaped statement would show what Cavaness said in his own words, and not through the detective's testimony).

Cavaness was less culpable than others in the causing the victim's death.[8] As there is no evidence or showing that further investigation by Cornwell or the filing of a motion to suppress Cavaness' videotaped statement would have altered the outcome of the trial, the court finds Cavaness is not entitled to relief on this claim.

### 2. Abandonment of Defense (Claim I-B)

Cavaness also claims he was not consulted prior to Cornwell's closing argument that Cornwell would be abandoning the defense of an unintentional killing, and instead admitting that Cavaness intentionally killed the victim.[9]

Respondents contend federal habeas review of this claim is barred by Cavaness' failure to raise this specific claim to the state courts. Pointing to K.S.A. 60-1507(c) and Kansas Supreme Court Rule 183(d) as barring a second or successive motion for collateral review, respondents maintain this independent and adequate state procedural bar precludes federal habeas review unless Cavaness can show cause for his default in failing to raise this issue to the state courts and actual prejudice as a result of the alleged violation of his federal rights, or can demonstrate that this court's failure to

---

[8] Cornwell's strategy was clearly reflected in the sentencing court's consideration of mitigating factors, and its decision to impose a hard-25 rather than a hard-50 sentence. The mitigating factors identified by the court included: the defendant's age, lack of any criminal history, Eagle Scout achievement, and positive community involvement prior to use of crack cocaine; defendant's cooperation with the police after his arrest, and help locating the body and the victim's burned clothing; defendant being the least culpable of the three actors involved; and defendant's impaired thinking by the use of crack cocaine. Vol. VII, pp.13-14.

[9] In the state post-conviction evidentiary hearing, Cornwell testified his trial strategy was based in part on Cavaness taking responsibility for being a minor participant in the attack and beating of the victim, but not an active participant when the victim was killed, and to appeal to the jury's sympathy that Cavaness was on crack cocaine at the time. Vol. VIII, p. 16 and 37. Closing arguments followed the trial court's decision to not instruct the jury on a lesser included offense of second-degree unintentional killing, as Cornwell had requested.

consider this procedurally defaulted claim will result in a fundamental miscarriage of justice.

When seeking habeas corpus relief under § 2254, claims of error in state court criminal proceedings which were not raised in the state courts are considered defaulted. *Wainwright v. Sykes*, 433 U.S. 72 (1977). The procedural default doctrine bars federal review of a state prisoner's federal claim where the prisoner failed to give the state courts a "full and fair" opportunity to resolve that claim, and state court remedies are no longer available to cure that failure. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(procedural default doctrine preserves integrity of the exhaustion doctrine); *Coleman v. Thompson*, 501 U.S. 722, 732 and 735 n.1 (1991)(discussing procedural default and anticipatory default doctrine).

Cavaness acknowledges his post-conviction counsel did not raise this particular allegation in Cavaness' state post-conviction proceeding or appeal, but argues state court remedies were essentially exhausted because the substance of this claim rests on evidence presented in the post-conviction proceeding about Cornwell's general failure to adequately communicate with his client.[10] The court disagrees.

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights. See *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts. See *Castille v. Peoples*, 489 U.S. 346, 351 (1989). A petitioner cannot exhaust state court remedies by presenting a different claim to the state courts than he raises in federal

---

[10]Cavaness maintains that Cornwell's unilateral decision to argue during closing argument that Cavaness had the intent to kill (Ineffective Assistance Claim I-B) is "substantially similar" to the claim regarding counsel's failure to communicate (Ineffective Assistance Claim I-A) "so as to meet the exhaustion requirement." Petitioner's Memorandum in Support of Petition, Doc. 8, p.9.

court. See *Picard v. Connor*, 404 U.S. 270, 276 (1971). "[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.1998). See also *Demarest v. Price*, 130 F.3d 922, 932 (10th Cir.1997).

The court finds Cavaness failed to present this issue to the state courts during his 1507 proceeding and appeal, and finds no showing to excuse his failure to do so. Cavaness has no right to counsel in state post-conviction proceedings, and identifies no external factor or state interference which prevented him from raising this issue with his other allegation of ineffective assistance of counsel. *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991)(acts or omissions of post-conviction counsel cannot serve as cause to excuse procedural default). Nor do his allegations support a finding of actual prejudice resulting from this claim not being raised to the state courts, or of actual innocence to show manifest injustice if the claim is not considered on federal habeas review.

### 3. Evidentiary Hearing (Claim III)

Cavaness' request for an evidentiary hearing to further develop this specific allegation of ineffective assistance is denied.

In relevant part, 28 U.S.C. § 2254(e)(2) provides that if a petitioner failed to develop the factual basis of his abandonment claim in his state court proceedings, a federal court shall not hold an evidentiary hearing on this claim unless petitioner asserts a factual predicate to that claim that could not have been previously discovered through the exercise of due diligence, and sufficient facts, if true, to establish he was entitled to habeas relief.[11] "Diligence for purposes of the opening clause

---

[11] In full, 28 U.S.C. § 2254(e)(2) reads:
If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
    (A) the claim relies on--

[in § 2254(e)(2)] depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams v. Taylor*, 529 U.S. 420, 435 (2000).

The state court conducted a hearing on Cavaness' allegations of ineffective assistance of counsel, but notwithstanding Cavaness' efforts to establish inadequate communication and consultation with Cornwell, Cavaness failed to pursue relief on allegations that Cornwell unilaterally abandoned the defense that Cavaness did not act with an intent to kill the victim. "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Taylor*, 529 U.S. at 437. Because Cavaness failed to present and pursue his abandonment claim to the state courts, the restrictions imposed by § 2254(e)(2) clearly apply and defeat Cavaness' request for an evidentiary hearing in federal court. *See McGee v. Higgins*, 568 F.3d 832 (10th Cir.), *cert. denied*, 130 S.Ct. 235 (2009)(evidentiary hearing in district court precluded by petitioner's failure to exercise required diligence in developing record in state court proceedings regarding voluntariness of his plea where petitioner never challenged withdrawal of plea hearing in state court, and nothing indicated the state courts prevented petitioner from developing record on the voluntariness of his plea).

**B.     Jury Instruction on Lesser Included Offense (Claim IV)**

Cavaness contends the trial court erroneously found the evidence did not support Cavaness'

---

        (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

request that the jury be instructed on the lesser included offense of unintentional second-degree murder.[12] Cavaness argues this alleged error violated Kansas law and denied him a fair trial.

However, "the Supreme Court has never recognized a federal constitutional right to a lesser included offense instruction in non-capital cases, and neither has [the Tenth Circuit Court of Appeals]." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). The "failure to instruct the jury on a lesser included offense, even assuming the evidence was such to warrant an instruction on a lesser included offense, would not be a ground for granting federal habeas corpus relief." *Chavez v. Kirby*, 848 F.2d 1101, 1103 (10th Cir.1988)(citing *Poulson v. Turner*, 359 F.2d 588 (10th Cir.1966)). Although Cavaness argues an instruction on the lesser included offense was required under Kansas law, this court's habeas review examines only if the trial court's decision was contrary to or an unreasonable application of clearly established federal law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991)(federal habeas relief is only available upon a showing that a conviction violated federal law and review "does not lie for errors of state law")(quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). As there is no recognized federal due process right to a lesser-included offense instruction in a non-capital case, Cavaness is entitled to no habeas relief on this claim.

## C. Sufficiency of the Evidence (Claim V)

Cavaness claims insufficient evidence supports his convictions on premeditated murder charges. Cavaness argues he never intended to kill the victim, and points to greater direct

---

[12]The Kansas Supreme Court observed that Cavaness "requested instructions on both second-degree murder as defined by K.S.A. 21-3402(a)(intentional) and K.S.A. 21-3402(b)('killing of a human being committed ... unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life'). The trial court granted the request for an instruction on intentional second-degree murder and instructed the jury on voluntary intoxication as a defense. Regarding the request for an instruction on unintentional second-degree murder, the trial court denied the request, noting there was no 'basis in the record for that particular instruction.'" *Cavaness*, 278 Kan. at 473-74.

involvement by others in the victim's death.

When reviewing the sufficiency of the evidence in a habeas corpus action "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial. *Id*. The Kansas Supreme Court rejected Cavaness' claim of insufficient evidence on its merits, thus Cavaness cannot obtain habeas relief unless the state court's legal conclusions are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court... or the state court's factual conclusions are "based on an unreasonable determination of the facts in light of the evidence presented ...;" 28 U.S.C. § 2254(d)(1) and (2). Cavaness satisfies neither standard.

The Kansas Supreme Court found Cavaness' participation before and after the killing was more than adequate to establish premeditation, stating:

> Premeditation can also be inferred from Cavaness' conduct before and after the killing. First, he participated in the fight where he and two other men struck the victim in the head with their weapons, knocking the victim unconscious. They then dragged the victim inside the house and discussed the fact that they could not let the victim leave. Cavaness called the neighbor for rope to tie up the victim. Even the defendant's sister, who testified that the defendant spent "[a]lmost the entire time" in her bedroom, admitted that all of the men came and went from her bedroom. After the victim's death, Cavaness and the other men attempted to clean up the blood in the house, dumped the victim's body in the river, and burned the clothes they had been wearing.
>
> Finally, there was evidence, including Cavaness' own testimony and statement, that the victim was dealt additional blows after he had been felled and rendered helpless. The evidence was sufficient to support the inference that this murder was premeditated.

*State v. Cavaness*, 278 Kan. 469, 480 (2004).

Having reviewed the record, the court finds the evidence presented in Cavaness' trial, and any reasonable inferences that might be drawn from it, was sufficient to convince rational jurors beyond a reasonable doubt that Cavaness acted deliberately and with premeditation in beating the victim over a period of time, ignoring the victim's serious injuries, and participating in the restraint and disposal of the victim's body. Cavaness has not demonstrated the state court's finding of sufficient evidence to establish premeditation was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). Accordingly, Cavaness is entitled to no relief on this final claim.

**V.     Conclusion**

Cavaness makes no showing that he is entitled to habeas corpus relief under § 2254 on any claim, or to the evidentiary hearing he requests. The petition for a writ of habeas corpus is denied.

**IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus under 28 U.S.C. § 2254 is denied.

Dated this 29th day of October 2010 at Kansas City, Kansas.

s/ Carlos Murguia
CARLOS MURGUIA
United States District Judge